## Thaddeus Nichols & others vs. Benjamin F. Coffin & others.

A testator ordered and directed in his will that all promissory notes given to him by any of his sons or sons-in-law, or daughters or daughters-in-law, should be deemed, taken and reckoned as part and parcel of his estate, and devised all of his estate, real, personal and mixed, and wheresoever situate, and in whose hands soever, to trustees, for the sole and exclusive benefit of his own children and grandchildren, and their respective heirs, with directions to pay over the income of an equal share thereof to each living child and the representatives of such as had died, and gave nothing and evidently intended to give nothing to any of his sons-in-law, and expressly ordered the notes given to him by his own sons to be given up to them, as a portion of the share set apart for them respectively. *Held*, that a direction to the trustees, declared to be for the purpose of doing exact justice and producing perfect equality, that all promissory notes so given to him by any of the above named persons should be deducted from and out of the respective shares of his estate, ordered to be held and set apart by the trustees for the benefit of his said respective sons and daughters, should not be construed as a direction to cancel or surrender notes given to him by a son-in-law, but only as a direction to appropriate the same as a part of the share of his estate set apart for the benefit of such son-in-law's wife.

*Held*, also, that a similar construction should be given to the same direction, in reference to

an unsecured note given to him by another son-in-law, payable "without interest, with interest on the same from and after my decease," although the will provided, in one clause thereof, that no notes should be deducted or taken of the share or portion set apart for the benefit of his children, except such unsecured note, and it appeared that another note, with collateral security, had been given by him to the testator; and although the will directed the income of one share of the testator's estate to be paid over to the children of the deceased wife of such son-in-law, "after deducting therefrom" the said unsecured note of their father.

*Held*, also, that under the same direction, notes given to him by several of his children, each of which was expressed on its face to be "in part payment of what I may inherit on my father's decease, and to be charged to me," were to be deducted from the amount of the shares set apart for their benefit, respectively.

*Held*, also, that, some of the several notes referred to having been made payable with interest, and others not, the division of the estate should be made as of the day of the testator's death.

Bill in equity, in which the trustees appointed under the will of Jared Coffin, late of Brighton, ask the instruction and direction of the court in the execution of the trusts therein created. All the parties in interest under the will were made defendants.

At the hearing, before *Chapman*, J., it appeared that Mr. Coffin died in May 1860, leaving a will executed June 23, 1859, which was duly proved and allowed, and the material portions of which were as follows:

"In the name of God, Amen. I, Jared Coffin, of Brighton, in the county of Middlesex and Commonwealth of Massachusetts, do make, ordain and publish this my last will and testament, in manner following; that is to say: —

"All the estate, real, personal or mixed, and wheresoever situate, and in whose hands soever, and whereof I may die seised and possessed or entitled unto, I give, devise and bequeath unto Israel Whitney and Thaddeus Nichols, both of Boston, in the county of Suffolk and Commonwealth aforesaid; and Henry A. Kelley, of Brooklyn, in the county of Kings and State of New York; to have and to hold to them, the said Whitney, Nichols and Kelley, and the survivor of them, upon the trusts and for the purposes following; that is to say: —

"*First*, That they, the said Whitney, Nichols and Kelley, and the survivor of them, shall, during the lifetime of Mary F. French, Amelia A. French, William H. French and Anna K

French, children of my deceased daughter Rebecca S. French, wife of William S. French, of Providence, Rhode Island, pay over to them respectively, in equal shares, the interest, rents, income, dividends and profits of one-seventh part of such my estate, real, personal and mixed, after deducting therefrom the note of their father William S. French, dated February 6th, 1853, for $16,864.32, payable to me, said Coffin, or order, without interest, with interest on the same from and after my decease; and on the decease of either of them, the said Mary, Amelia, William or Anna, shall distribute and divide one-fourth part of such portion of my estate to and among the children of such of them as shall so die, share and share alike; the descendants of any such child or children to take the share which his, her or their parent would be entitled to if living. In case either of them, the said Mary, Amelia, William or Anna, shall die, leaving no lawful descendants, then the share or portion of such interest, rents, income, dividends and profits, payable to such of them as shall so die, is to be paid to the survivor and survivors of them; and if they all die, leaving no children, or descendants of children, living at their decease, then the said portion of my estate shall be held by the said trustees, or the survivor of them, for the use and benefit of my surviving children, or the issue of their children, in the same way and manner as is herein provided for as in respect of the other portions of my estate which I have herein disposed of, and which the said trustees are to hold in trust in the way and manner herein set forth. In case either of them, said Mary, Amelia or Anna, shall marry, her share or portion of such interest, rents, income, dividends and profits shall be to her sole and separate use, and free from the control or interference of any husband.

" *Second*, That they, the said Whitney, Nichols and Kelley trustees, shall deliver over to my son Benjamin F. Coffin, of Nantucket, whatsoever promissory notes I may hold against him at my decease; which notes, without any interest, are to be reckoned as part and parcel of my estate and property, and are to be reckoned as part of the seventh part which I set apart for the benefit of my son Benjamin; and that they, the said

Whitney, Nichols and Kelley, shall pay over to the said Benjamin, during the term of his natural life, the interest, rents, income, dividends and profits of such further portion of my estate, as, added to the notes aforesaid of Benjamin F. Coffin, shall equal and amount to one-seventh part of my said estate. [Here followed provisions in case of his death, similar, so far as appropriate, to those in article 1.]

"*Third*, That they, the said Whitney, Nichols and Kelley, and the survivor of them, shall, during the lifetime of my daughter Eliza S. Nevens, wife of David Nevens, of Brighton, in the said county of Middlesex, pay over to her, the said Eliza, the interest, rents, income, dividends and profits of another seventh part of my estate, to her sole and separate use, and not to be subject to the debts nor engagements of her husband; and her own receipt to be a sufficient release and discharge. [Here followed provisions in case of her death, similar, so far as appropriate, to those in article 1.]

"*Fourth*, That they, the said Whitney, Nichols and Kelley, and the survivor of them, shall, during the lifetime of my daughter Anna B. Kelley, wife of Henry A. Kelley, of Brooklyn, as hereinbefore stated, pay over to her, the said Anna B. Kelley, the interest, rents, income, dividends and profits of another seventh part of my estate, to her sole and separate use, and not to be subject to the debts nor engagements of her husband; and her own receipt to be a sufficient release and discharge. [Here followed provisions in case of her death, similar, so far as appropriate, to those in article 1].

"*Fifth*, That they, the said Whitney, Nichols and Kelley, and the survivor of them, shall, during the lifetime of my daughter Sarah F. Baxter, wife of John N. Baxter, of Burlington, in the State of Iowa, pay over to her, the said Sarah F. Baxter, the interest, rents, income, dividends and profits of another seventh portion of my estate, to her sole and separate use, and not to be subject to the debts nor engagements of her husband; and her own receipt to be a sufficient release and discharge. [Here followed provisions in case of her death, similar, so far as appropriate, to those in article 1.]

" *Sixth*, That they, the said Whitney, Nichols and Kelley, and the survivor of them, shall, during the lifetime of George N. Hastings, William F. Hastings, and Henry B. Hastings, children of my deceased daughter Emeline Hastings, wife of Thomas Nelson Hastings, of Cambridge, in the said county of Middlesex, pay over to them, respectively, in equal shares, the interest, rents, income, dividends and profits of one other seventh of my said estate, real, personal and mixed. [Here followed provisions in case of the death of either of them, similar, so far as appropriate, to those in article 1.]

" *Seventh*, That the said Whitney, Nichols and Kelley shall deliver over to my son Rowland G. Coffin, of West Newton, in the said county of Middlesex, whatever promissory notes I may hold against him at my decease; which notes, without any interest, are to be reckoned as part and parcel of my estate and property, and are to be reckoned as part of the seventh part which I set apart for the benefit of my son Rowland; and they, the said Whitney, Nichols and Kelley, shall pay over to the said Rowland, during the term of his natural life, the income, rents, dividends and profits of such further portion of my estate, as, added to the said notes of Rowland G. Coffin, shall equal and amount to one-seventh part of my said estate." [Here followed provisions in case of his death, similar, so far as appropriate, to those in article 1.]

" *Tenth*, My will is, and I hereby order and direct, that all promissory notes or other securities given me, or which shall be given me, by any of my sons or sons-in-law, or by any of my daughters or daughters-in-law, notwithstanding their coverture, and notwithstanding the same may be barred by the statutes of limitation, shall be deemed, taken and reckoned as part and parcel of my estate; and for the purpose of doing exact justice, and producing perfect equality, I direct that the same respectively, with interest thereon, shall be deducted from and out of the respective shares of my estate heretofore ordered to be held and set apart by the trustees aforesaid for the benefit of my said respective sons and daughters, excepting that no interest whatever shall be computed on the notes signed by my sons, Benjamin F.

Coffin and Rowland G. Coffin, respectively; and no notes shall be deducted or taken of the share or portion set apart for the benefit of the children of William S. French, except the note for $16,864.32 before mentioned."

The executors of the estate, on settlement, delivered to the trustees then acting, George B. Upton having been appointed in place of Kelley, who declined to act, the assets in their hands, including two notes of Rowland G. Coffin, amounting together to $33,547; five notes and a receipt of Benjamin F. Coffin, amounting together to $29,990; the note of William S. French, for $16,864.32, referred to in articles 1 and 10 of the will; a note of said French for $6683.66, together with, and as collateral security therefor, a certificate for fifty shares of the capital stock of the Providence Tool Company; a note of Rebecca S. French, for $500; a receipt of T. Nelson Hastings, for $500; two notes of Eliza S. Nevens, amounting together to $600; a note of Anna B. Kelley, for $500; four notes of Henry A. Kelley, amounting together to $37,181, together with two mortgages and a bill of sale of a share of a vessel as collateral security therefor; and a note of Sarah F. Baxter, for $1523.75. The form of the notes of Mrs. French, Mrs. Nevens, Mrs. Baxter and Mrs. Kelley was as follows: "For value received, I promise to pay to Jared Coffin or order dollars on demand with interest, in part payment of what I may inherit on my father's decease, and to be charged to me." The receipt of Mr. Hastings expressed that the sum was received "in part payment for what my children, George, William S. and Henry B. Hastings, may inherit on the decease of said Jared Coffin."

The amount of the testator's estate, including the property above mentioned, was $313,970.07. Kelley and French failed in business in 1857, and were insolvent or in embarrassed circumstances at the time when the will was made.

The questions presented were reserved for the determination of the whole court.

*F. C. Loring*, for the trustees, and for the defendants Hastings, Nevens and Baxter.

*C. P. Curtis, Jr.* for the defendants Kelley and French.

MERRICK, J. In relation to the principles of law upon which the questions presented to our consideration in the report depend, there is no difference of opinion or controversy between the parties They all very properly concede that their respective rights depend upon such a construction of the provisions of the will as shall most completely effectuate the intention of the testator; and that this intention is to be collected, according to the familiar and established rule in reference to such instruments, by giving, as far as may be, full effect to each and every part of it. 4 Kent Com. (6th ed.) 534.

Some of the provisions of the will are very inartificially and obscurely expressed. But, upon examination of the whole of it, no serious or substantial difficulty is found, or has been suggested, in relation to the disposition of the estate of the testator, except as to the several promissory notes held at the time of his decease, which had been given to him by his son-in-law Henry A. Kelley, and as to the note of $16,864.32, given to him by his son-in-law William S. French. It is contended in their behalf that, by the terms and provisions of the will, the payment of these notes is not to be enforced or required, but that all of them ought to be cancelled and given up to the makers. This claim is founded, so far as Mr. Kelley has an interest in it, upon the direction of the testator in the 10th article of the will, that all the notes given to him by any of his sons, sons-in-law or daughters shall be deducted from and out of the respective shares of his estate which the trustees appointed by him are ordered to set apart and hold for the benefit of his children and grandchildren. This provision is also relied upon by Mr. French and his children in support of their claim; but they contend that it is also sustained by the provision of the first article in the will, which requires the trustees to pay over in equal shares to the four grandchildren, children of the testator's deceased daughter Rebecca S. French, who was the wife of said William, the income of the one-seventh part of the estate after deducting therefrom the said note of their father for said sum of $16,864.32.

If these provisions stood alone, and were in no respect

affected, controlled or modified by other parts of the will, an implication might arise, which would sustain the claims asserted by Kelley and by French, and entitle them to insist upon a surrender of their notes. But there are other provisions in it which have an obvious and direct bearing upon the question, in view of which it becomes apparent that the testator intended by these directions, though his purpose might have been indicated in terms more direct and explicit, to specify and declare what should, in part, constitute the respective funds, the income of which should in the one case be paid by his trustees to his grandchildren, and in the other to his daughter Mrs. Kelley; namely, that the said note of their father for $16,864.32 should constitute a portion of the seventh part of the testator's estate, the income of which was to be appropriated and applied for the benefit of the children of his daughter Rebecca; and that the several notes of Mr. Kelley should in like manner constitute a portion of another seventh part of the estate, the income of which should be paid over to his daughter Anna B. Kelley, to her sole and separate use, and not subject to the debts or engagements of her husband. The property held in pledge or mortgaged as security for the payment of these notes must, when they are thus set apart and appropriated, be retained by the trustees for the same purposes for which it was held by the testator.

This conclusion is a necessary result from giving effect to all the provisions of the will, which upon examination are found to be for the benefit of his own family. The testator first gives, devises and bequeaths all his estate, real, personal and mixed, in whose hands soever it may be found, and whereof he may die seised and possessed or entitled unto, to Israel Whitney, Thaddeus Nichols and Henry A. Kelley, to be by them held in trust for purposes afterwards clearly and distinctly expressed, and all of which are solely for the benefit of his own children and grandchildren and their respective heirs. He gives nothing, and evidently intends to give nothing, to his sons-in-law. This is apparent, not only from the absence of any language importing a gift to them, but from the consideration that all his bequests

to his daughters and to his female grandchildren are directly to them and to their own sole use, free from the interference and control of their respective husbands, and not subject to any of their debts or engagements. In the 10th article of the will, he expressly declares and orders that all the promissory notes given to him by any of his sons, sons-in-law or daughters, shall be deemed, taken and reckoned as part and parcel of his estate. All these notes, therefore, must pass to the trustees under the devise and bequest to them of all his estate, to be retained by them subject to the trust created, and for the purpose of its due execution. This shows very clearly that the aforementioned notes of Kelley and French are not to be cancelled or surrendered to them, but are to be considered, in its final settlement and distribution, as component parts of the testator's estate. And having first devised all his estate, including these notes, to Whitney, Nichols and Kelley, in trust, he explains and declares what the trust, created by his will, and the object and purposes of it, and the manner in which it shall be executed, are, by directing the trustees to divide the whole estate, thus defined, into seven equal parts, and then to set apart and thereafter hold each one of said seven parts as a separate and distinct estate or fund, and to pay the interest, rents, income and profits of one of said several seventh parts, to each of his sons and daughters, and to the children of his deceased daughter Rebecca S. French, and to the children of his deceased daughter Emeline Hastings. The whole of the estate is therefore absolutely disposed of for the benefit of his children and grandchildren, who are particularly and specifically named as the sole parties who are to derive any beneficial interest under the will.

But each one of these several parcels or seventh parts of the testator's estate is made subject to certain deductions and regulations; and it is only the interest, income and profits which shall be derived by the trustees from each of said seventh parts so set apart and appropriated as a particular fund or estate, after the proper deductions and regulations shall have been made and applied, that is to be paid to the several *cestuis que trust* Thus it is expressly ordered that the notes given to the testator

by his sons Benjamin and Rowland shall be given up and delivered over to them; and that the trustees shall hold and pay over to them only the income to be acquired from the residue of the one seventh part of the whole estate which shall remain after those deductions shall have been made. In like manner, the notes of Mrs. Kelley, Mrs. Baxter and Mrs. Nevens are to be deducted out of the seventh part of the estate bequeathed for the benefit of each of them to the trustees, and to be set apart for their use, that they may have the enjoyment of the income to be derived from it, since it is apparent from the terms of their several notes that the moneys for which they were given were advancements to them by their father, and are therefore to be reckoned as a part of his estate only for the purpose of making a just and equal division among all his children, by first ascertaining the aggregate which is to be divided into separate shares. This is true also of the note of Mr. Hastings, and therefore his note is to be deducted from the seventh part of the estate, the income of which is to be paid to the children of his wife Emeline Hastings, one of the deceased daughters of the testator. In all these cases the necessity, as well as the propriety, of making these deductions from the several seventh parts of the estate to be set apart and held by the trustees for the benefit of the *cestuis que trust*, is plain and manifest; for as they are to receive only the income, it would be wholly superfluous to pay as interest the sums which they would be entitled to receive immediately back again as their own, as a part of the income of the fund held solely for their own individual use and enjoyment.

Mrs. Kelley gave only one note to the testator, and that for money received of him merely as an advancement out of his estate. The reason for deducting the amount of it from the share to be set apart for her use is therefore obvious. But this reason is wholly inapplicable to the notes of her husband which were given for value, and constituted a valid debt due from him. As these notes are expressly recognized by the testator as a part of his estate, of which a division is to be made, and as they are not, as in the case of the notes of his sons

Benjamin and Rowland, ordered to be given up to the maker, nor in any other way specifically disposed of, it is apparent that, as applicable to them, by the general direction in the 10th article of the will that the notes of his sons, sons-in-law and daughters shall be deducted out of the respective shares to be set apart and held by his trustees for the benefit of his several sons and daughters, the testator must have intended that these notes of her husband should be deducted and withdrawn from the shares of others in the estate, and so appropriated by the trustees as to constitute a portion of that seventh part of it which they were to hold for the special, sole and exclusive use of Mrs. Kelley. The same considerations lead to a like result in the case of Mr. French, showing that his note for $16,864.32 is to constitute a portion of that particular seventh part of the estate which is bequeathed to the trustees for the benefit of the children by his wife Rebecca S. French, another of the deceased daughters of the testator. This conclusion is strengthened by the circumstance that, although this note in its terms is not payable with interest, the testator directs that it shall bear interest after his decease; a result which could be the consequence only of a demand for its payment, thus evincing a clear intention that the note should not be given up to the maker, but be retained as a valid and continuing obligation against him. It has indeed been urged in behalf of Mr. French, that as he had given two notes to the testator, and as the direction respecting the deduction from the share to be set apart for the benefit of the children of Mrs. French is carefully limited to one of the notes, such a discrimination indicates an intention that this should be cancelled and annulled, and that payment should be required only of the other. But the reasons for this discrimination are obvious. Fifty shares in the capital stock of the Providence Tool Company were held as collateral security for the payment of the smaller note, which might therefore well be deemed good for its nominal value, and available to that extent in the final settlement of the estate; but the other being unsecured, it was intended that any loss which should result from the inability of the maker to pay it should be sustained by

his children, rather than by the other members of the testator's family.

There is another consideration leading to the same conclusion as to the intention of the testator in reference to these notes of his sons-in-law, French and Kelley. In the 10th article of the will the testator declares that all his directions concerning the disposition of his estate are given for the purpose of doing exact justice and producing perfect equality. This must have reference exclusively to his children and grandchildren; for he makes no provision in favor of any one else. And this his declared purpose, the object and design of all his orders and directions, would be utterly defeated by acceding to the claims of French and Kelley. From the statements in the report as to the aggregate of the testator's estate, it appears that one seventh part of it is nearly forty-five thousand dollars. Assuming this to be correct, and it is sufficiently near exact accuracy for the purpose of illustration, it would follow that if the notes of her husband, amounting to about thirty-seven thousand dollars, are to be deducted from her share, Mrs. Kelley will be entitled to the income of a fund little more than a sixth part of the shares which for a like purpose are to be set apart for her brothers and sisters. The same is true also as to the share of the children of Mrs. French, except only that the inequality to be produced by the deduction proposed by their father would be less extreme and severe. Such results are not in accordance with the declared purpose of doing exact justice and of producing perfect equality in the distribution of his estate among his children, and cannot therefore have been intended by the testator.

It has been suggested that there are expressions in the 10th article of the will which indicate an intention that the note of Mrs. French should not be considered for any purpose whatever in the settlement of the estate, but should be cancelled and given up as entirely worthless. As all the parties in interest now consent and desire that it should so be disposed of, there can be no objection to the entry of a decree to that effect, without considering whether the suggestion, upon a fair exposition of the expressions referred to, could be sustained.

A question has been made as to the time in reference to which the division of the estate by the trustees should be predicated, and to which interest on the notes of the sons, daughters and sons-in-law, bearing interest, should be computed. This must obviously be the day of the death of the testator; for as some of the notes are payable with interest, and others are not, the adoption of any other date for this purpose would tend to produce some inequality among the *cestuis que trust*, a result which the testator sedulously sought in all things to avoid.

There are limitations of the separate shares, the use and income of which are to be had and enjoyed by the several beneficiaries for life, over, on the termination of their respective life estates, to other parties. The effect of such limitations it is unnecessary and would be injudicious now to decide; for the parties who will then have an interest in the estate cannot now be before us; and it is by no means certain that, on the happening of the several contingencies upon which these limitations are to take effect, there will be any controversy among the claimants, or occasion for any judicial decision to establish or regulate their respective rights. The final decree is therefore to be entered, in conformity to the conclusions above stated.